STATE OF CONNECTICUT *v.* LOUIS ANIBAL PEREZ

COTTER, C. J., LOISELLE, BOGDANSKI, PETERS and HEALEY, Js.

Argued April 1—decision released June 24, 1980

---

*Richard Emanuel,* assistant public defender, with whom, on the brief, was *Jerrold H. Barnett,* public defender, for the appellant (defendant).

*Richard F. Jacobson,* assistant state's attorney, with whom, on the brief, were *Donald A. Browne,* state's attorney, and *Domenick Galluzzo,* assistant state's attorney, for the appellee (state).

LOISELLE, J. The defendant was charged with larceny in the first degree by receiving stolen property in violation of General Statutes §§ 53a-119 (8) and 53a-122 (a) (2). He was found guilty by a jury of six of a lesser included crime, second degree larceny by receiving stolen property, in violation of General Statutes §§ 53a-119 (8) and 53a-123 (a) (2). The defendant has appealed from the judgment rendered on the verdict.

The trial court's finding on the defendant's motion to suppress evidence is as follows: Officer Marlin Livey was on patrol on route 8 in Trumbull on October 12, 1976, at about 1 p.m., when he observed a brown vehicle with no license plate at the front but one at the rear.[1] Livey turned his police car around, turned on his overhead lights and pulled the vehicle over to the side of the road. He stopped the vehicle because the front license plate was missing.

---

[1] General Statutes § 14-18 requires "each motor vehicle" to display "in a conspicuous place at the front and the rear of such vehicle the number plates and inserts or stickers denoting the expiration month and year of such registration."

When the vehicle had stopped, the driver, Ralph Berrios, immediately left the car and hurriedly walked back approximately half a car length to the police car, before Livey could get out. Livey exited the police car and instructed Berrios to return to his car and to produce his license and registration. While standing next to the Berrios vehicle, Livey observed a television set on the rear seat. Livey then asked Berrios to accompany him back to the police car. Livey asked Berrios if he owned the television set and Berrios replied that he did. Livey then asked Berrios to remain alongside the police vehicle while he walked over to the passenger.

The passenger was the defendant, Louis Anibal Perez. Livey tried to speak to him but the window was rolled shut and Livey could barely hear the conversation. When Livey asked him to roll down the window, Perez replied that it was broken. Livey asked the defendant to open the door. Livey and Perez opened the door together. Livey observed Perez using his feet and legs in an attempt to hide a silver pitcher and some jewelry, and saw earrings, necklaces and things of that nature scattered all over the carpet of the vehicle. Perez did not answer Livey's questions and became argumentative. Livey asked Perez to remain in the vehicle and closed the door, then returned to the police car and called for assistance. After Livey had completed his call he heard something strike the ground in the dry leaves to the right of Berrios' car. He saw a black object fly through the air and land on the ground. Perez was seated in the passenger side of the car and the sunroof was open.

When additional officers arrived, they detained Berrios while Livey approached Berrios' car and

asked Perez to step out. When Perez got out, Livey saw in full view all of the jewelry he had not seen before. On the floor of the driver's side he found a jewelry box. In the jewelry box was a piece of paper with the name and address of a Westport resident and half of a black leather case with identification. Outside the car, in the area where he had seen objects thrown, he found jewelry, necklaces, a few earrings, and the other half of the black leather case containing a numbered Fairfield police badge.

Livey contacted police headquarters and furnished them with the information found on the two pieces of identification. When they informed him of a burglary at the Westport residence in which items of jewelry had been taken, Livey arrested both Berrios and Perez. After the defendants were arrested, the trunk was opened and searched. Other items of silver were found in the trunk. The Berrios vehicle was towed to police headquarters and inventoried. Additional jewelry was found during the inventory search at headquarters.

The defendant[2] has assigned error in one paragraph of the court's finding, claiming that this fact was found without evidence. An appendix to the state's brief contains evidence from the transcript which supports the court's finding. The attacked paragraph in the finding cannot be stricken. *Smith* v. *Smith*, 174 Conn. 434, 443, 389 A.2d 756 (1978). The defendant also assigns error in the court's failure to include other facts which the defendant claims are material and either admitted or undisputed. "To secure an addition to the finding, an

[2] Berrios was originally scheduled to be tried with Perez. During jury selection, however, he changed his plea to guilty and Perez was tried alone.

appellant must point to some part of the appendix, the pleadings, or an exhibit properly before us which discloses that the appellee admitted that the fact in question was true or that its truth was conceded to be undisputed." *Malarney* v. *Peterson,* 159 Conn. 342, 344, 269 A.2d 274 (1970). Facts which are not material and could not affect the result cannot be added to the finding. *Xerox Corporation* v. *Board of Tax Review,* 175 Conn. 301, 304, 397 A.2d 1367 (1978). The facts which the defendant seeks to add to the finding are either contradicted by other facts found or implied in the findings made. No additions to the finding are warranted.

The defendant has raised three other issues on appeal. First he claims error in the court's denial of a pretrial motion to suppress and subsequent admission into evidence of items seized in the allegedly illegal search of the vehicle and surrounding area. The defendant claims that the evidence seized without a warrant from the automobile in which he was riding as a passenger was obtained in violation of his state and federal constitutional rights. U.S. Const., amends. IV, XIV; Conn. Const., art. I § 7. The defendant has standing to assert a violation of his rights under the fourth amendment to the United States constitution because although he was only a passenger in the Berrios vehicle and had no legitimate expectation of privacy in the areas of the car searched; *Rakas* v. *Illinois,* 439 U.S. 128, 99 S. Ct. 421, 58 L. Ed. 2d 387 (1978), reh. denied, 439 U.S. 1122, 99 S. Ct. 1035, 59 L. Ed. 2d 83 (1979); he was charged with an offense in which possession is an essential element and that same possession establishes standing under *Jones* v. *United States,* 362 U.S. 257, 263–64, 80 S. Ct. 725, 4 L. Ed. 2d 697 (1960), which in this respect has

not been overruled. *Rakas* v. *Illinois*, supra, 135 n.4; *State* v. *Paoletto*, 181 Conn. 172, 177, 434 A.2d 954 (1980). Here the defendant was charged with receiving stolen property by retaining such property knowing that it had been stolen. Since retention of the property is an esssential element of the crime charged and retention is tantamount to possession, the defendant had standing to challenge the search.

The defendant concedes the legality of Livey's initial stop of his vehicle for an apparent motor vehicle violation under General Statutes § 14-18. The stop was clearly permissible under *Delaware* v. *Prouse*, 440 U.S. 648, 663, 99 S. Ct. 1391, 59 L. Ed. 2d 660 (1979). The court found that Berrios then immediately exited the vehicle and hurriedly walked back to the police car. At this point Berrios was required under General Statutes § 14-217 to surrender his operator's license and registration to Livey upon Livey's request.[3] When Livey returned with Berrios to his car to obtain Berrios' license and registration, and saw the television set on the rear seat in plain view, Livey was standing in a position where he had a right to be.

Livey was performing a reasonable and legitimate investigative function when he asked Berrios

---

[3] General Statutes § 14-217 provides in part: "OPERATOR TO GIVE NAME AND SHOW OR SURRENDER LICENSE AND REGISTRATION. No person who is operating . . . any motor vehicle, when requested by any officer in uniform . . . shall . . . refuse, on demand of such officer . . . to produce his motor vehicle registration certificate and operator's license . . . ." Although the applicability of this statute has been curtailed under *Delaware* v. *Prouse*, 440 U.S. 648, 99 S. Ct. 1391, 59 L. Ed. 2d 660 (1979), its applicability under these circumstances, where the vehicle was not properly identified by a front license plate, was clearly proper.

who owned the television set. *Terry* v. *Ohio,* 392 U.S. 1, 22, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968). "Effective crime prevention and detection underlie the recognition that a police officer may, in appropriate circumstances and in an appropriate manner, approach a person for purposes of investigating possible criminal behavior even though there is no probable cause to make an arrest." *State* v. *Watson,* 165 Conn. 577, 584–85, 345 A.2d 532 (1973). The finding states that "Officer Livey asked Mr. Berrios if he owned the television set, and Mr. Berrios responded that he did." As the defendant states in his brief, mere suspicion is insufficient justification for the warrantless search of an automobile. *Chambers* v. *Maroney,* 399 U.S. 42, 50–51, 90 S. Ct. 1975, 26 L. Ed. 2d 419 (1970); *Carroll* v. *United States,* 267 U.S. 132, 155–56, 45 S. Ct. 280, 69 L. Ed. 543 (1925); 1 LaFave, Search & Seizure: A Treatise on the Fourth Amendment § 3.1 (a), pp. 440–41. If, however, a police officer's suspicions upon a lawful stop are further aroused, the stop may be prolonged and the scope enlarged as required by the circumstances, provided the scope of the investigation remains within the limits created by the facts upon which the stop is predicated and the suspicion which they arouse. *Terry* v. *Ohio,* supra, 21–22, 29; *State* v. *Watson,* supra, 585. Berrios' manner could well have precipitated Livey's minimal intrusion into the constitutionally protected interests of Perez which occurred when Livey tried to ask Perez, from outside the car, who owned the television set. *Terry* v. *Ohio,* supra, 20–22. After Livey asked Perez to roll the window down and Perez indicated that he couldn't because it was broken, Livey asked Perez to open the door. This was a reasonable request in view of the circumstances. *Pennsylvania* v. *Mimms,*

434 U.S. 106, 108–109, 98 S. Ct. 330, 54 L. Ed. 2d 331 (1977). It was also a request in which Perez acquiesced; Perez and Livey together opened the door. It was then that the jewelry and silver which Perez was trying to conceal with his feet came into plain view. "[O]bjects falling in the plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be introduced in evidence." *Harris* v. *United States,* 390 U.S. 234, 236, 88 S. Ct. 992, 19 L. Ed. 2d 1067 (1968); *State* v. *Hoffler,* 174 Conn. 452, 461, 389 A.2d 1257 (1978); *State* v. *Krause,* 163 Conn. 76, 82–83, 301 A.2d 234 (1972). The court did not err in denying the defendant's motion to suppress.

The defendant claims error in the court's denial of a motion for a mistrial and a motion to suppress evidence of a previously undisclosed oral statement allegedly made by the defendant to a police detective. At the scene of the arrest, the defendant made two oral statements at different times; one to a police detective, the other to a police sergeant. Both statements were elicited by police questioning. Despite a court order issued four months before trial which directed the state to disclose "all statements, admissions, or confessions made by the defendant whether written, oral, or electronically recorded," only one of those statements was disclosed to the defense before trial.[4] The other was elicited on direct examination by the state of the police detective to whom the statement was made.

[4] Although the defendant's response to the officer's question was not a "statement" as defined by Practice Book, 1963, § 2160 (now Practice Book, 1978, § 749) because it was oral and not written, the court had the authority to order the prosecutor to disclose the defendant's oral statements and admissions pursuant to Practice Book, 1963, § 2156 (now Practice Book, 1978, § 745).

The detective testified that he appeared on the scene of the arrest to photograph the items found in the car. Just prior to taking the photographs he had a conversation with the defendant. When he asked Perez where he had gotten the items found in the car, Perez responded that he was helping his friend move these items from one apartment to another. As soon as this testimony was given, defense counsel objected and asked that the jury be excused. In the jury's absence, defense counsel moved for a mistrial on the grounds that the state had elicited an oral admission from the defendant which it had failed to disclose to the defense as required by the court order. Counsel was particularly concerned because the state acknowledged that it still intended to introduce the defendant's other statement to the police sergeant that he had found those items on the side of the Merritt Parkway.

In the jury's absence it was established that the detective did not file a report concerning the defendant's statement and had not revealed this information to anyone prior to the day of his testimony. Defense counsel contended that the state had a continuing duty to disclose such information under Practice Book, 1963, § 2145[5] (now Practice Book, 1978, § 734) as soon as the state became aware of it and certainly before introducing it as evidence in front of the jury. The state responded by telling the court that it was only a few minutes before 2 o'clock, when the detective was scheduled to take the stand, that it first learned of the defendant's

[5] Practice Book, 1963, § 2145 provided in pertinent part: "CONTINUING OBLIGATION TO DISCLOSE. If prior to or during trial a party discovers additional material previously . . . ordered to be disclosed . . . he shall promptly notify the other party and the judicial authority of its existence."

statement and that, if anything, the statement appeared to be exculpatory. The court offered defense counsel a continuance but the offer was not accepted. The state then introduced, in the presence of the jury, testimony of the police sergeant whom Perez had told he found the items by the roadside in some bushes.

The defendant concedes that "[t]here is no general constitutional right to discovery in a criminal case." *Weatherford* v. *Bursey,* 429 U.S. 545, 559, 97 S. Ct. 837, 51 L. Ed. 2d 30 (1977); *Wardius* v. *Oregon,* 412 U.S. 470, 474, 93 S. Ct. 2208, 37 L. Ed. 2d 82 (1973); 2 Wharton, Criminal Procedure (12th Ed.) § 381. The defendant argues that although his statement was exculpatory on its face, its evidentiary effect, when juxtaposed with his other statement to the police sergeant, was inculpatory because the statements were contradictory. Since the net effect of the introduction of both statements was to cast doubt on the defendant's credibility, the defendant could have benefited from the state's prior disclosure of the statement made to the detective.

The defendant does not deny that the prosecutor was unaware of his statement to the detective until a few minutes before the detective was to testify as a witness for the state. Nor does the defendant claim that he was denied an opportunity to cross-examine the detective to whom the statement was made. The defendant admits that the court offered him a continuance to prepare other evidence to counter the effects of the detective's testimony. Here the item which the state failed to disclose to the defendant is the defendant's own statement. The purpose of criminal discovery is "to prevent surprise and to afford the parties a reasonable

opportunity to prepare for trial." *State* v. *Festo,* 181 Conn. 254, 265, 435 A.2d 38 (1980). It cannot be said that Perez was surprised by the introduction of his statement to the detective. Whether Perez chose to disclose to his attorney the fact that he made that statement is another matter. Perez' attorney had reason to believe the detective would testify on behalf of the state to introduce the photographs he had taken. *State* v. *Cook,* 225 Kan. 259, 261, 589 P.2d 616 (1979) ("[E]vidence not disclosed to the defendant before trial is not suppressed . . . if the defendant has personal knowledge thereof . . . ."); *State* v. *Wagner,* 587 S.W.2d 299, 302–303 (Mo. App. 1979); *State* v. *Joyner,* 571 S.W.2d 776, 778 (Mo. App. 1978) (Evidence subject to disclosure only if the facts indicate that the state is in possession of such evidence which is unknown to the defense and did not disclose its existence; not if the defendant knows the evidence exists and is in the state's possession).

The sole issue presented is whether the trial court abused its discretion by offering a continuance under Practice Book, 1963, § 2158 (2)[6] (now Practice Book, 1978, § 747 [2]) instead of granting the defendant's motion to strike the statement or the defendant's motion for a mistrial. *State* v. *Festo,* supra. " 'The general principle is that a mistrial

---

[6] Practice Book, 1963, § 2158 provides: "SANCTIONS FOR FAILURE TO COMPLY. If the prosecuting authority fails to comply with Sec. 2151, the judicial authority may, on motion of the defendant or on his own motion, grant appropriate relief, which may include one or more of the following: (1) Requiring the prosecuting authority to comply; (2) Granting the defendant additional time or a continuance; (3) Relieving the defendant from making a disclosure required by Sec. 2167, prohibiting the prosecuting authority from introducing specified evidence, or dismissing the charges; or (4) Entering such other order as he deems proper."

should be granted only as a result of some occurrence on the trial of such a character that it is apparent to the court that because of it a party cannot have a fair trial. . . . Although it is true that a state's attorney should scrupulously avoid questions of probable impropriety, we recognize that the trial judge is the arbiter of the many circumstances which may arise during a trial . . . [and that] [t]he trial court has a wide discretion in passing on motions for mistrial. . . . (Citations omitted.)' *State* v. *Piskorski,* 177 Conn. 677, 720–21, 419 A.2d 866 (1979). Suppression of relevant, material and otherwise admissible evidence is a severe sanction which should not be invoked lightly. . . ." *State* v. *Festo,* supra, 265. In determining what sanction is appropriate for failure to comply with court ordered discovery, "the trial court should consider the reason why disclosure was not made, the extent of prejudice, if any, to the opposing party, the feasibility of rectifying that prejudice by a continuance, and any other relevant circumstances." Id. The trial court did not abuse its discretion by offering the defendant a continuance in lieu of granting his motions to strike the evidence and for a mistrial.

The defendant's brief includes passing mention of the fact that the state did not show, before introducing the defendant's statement as evidence, that the defendant had been advised of his rights under *Miranda* v. *Arizona,* 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966). Although the record is silent, the defendant's rendition of the facts would show that no *Miranda* warnings were given before the police detective asked Perez where he obtained the items found in the car.

The defendant's statement in itself was not inculpatory. Nor was it relevant to the state's proof of any element of the crime charged. The court, in summarizing the evidence, stated that the ownership of the property was not in dispute. The statement was merely cumulative of evidence already overwhelming with regard to guilt. The error, if any, was harmless beyond a reasonable doubt. *Chapman* v. *California,* 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967); *Aillon* v. *State,* 173 Conn. 334, 338–39, 377 A.2d 1087 (1977).

The defendant argues that he was denied due process of law by the court's instructions to the jury on the issue of intent. This claim is considered although no exception was taken because it affects a fundamental right. *State* v. *Arroyo,* 180 Conn. 171, 429 A.2d 457 (1980); *State* v. *Evans,* 165 Conn. 61, 70, 327 A.2d 576 (1973).

The court instructed the jury that "there is just one crime" in this case: "That's larceny by receiving stolen property." The court recited the contents of the information which alleged that Perez "did retain the legal property of one Todd L. Boersma, valued in excess of two thousand dollars, knowing that said property was probably stolen in violation of section 53a-119, subsection 8, and section 53a-122, subsection (a) (2) of the Connecticut General Statutes." The court continued by stating the statutory definition of receiving stolen property,[7] then said: "Now, you will recall I have read the information.

[7] General Statutes § 53a-119 (8) provides: "Receiving stolen property. A person is guilty of larceny by receiving stolen property if he receives, retains, or disposes of stolen property knowing that it has probably been stolen or believing that it has probably been stolen, unless the property is received, retained or disposed of with purpose to restore it to the owner."

The state alleges in the information that it was retained. That's what the state is restricted to here. So for our purposes the statute reads as follows: A person is guilty of larceny by receiving stolen property if he retains stolen property knowing that it has probably been stolen or believing it has probably been stolen, unless the property is retained with purpose to restore it to the owner. I'll read it once more because I want to make sure you have it clearly in mind as we go through the rest of it. A person is guilty of larceny by receiving stolen property if he retains stolen property knowing that it has probably been stolen or believing it has probably been stolen, unless the property is retained with purpose to restore it to the owner. Now, each one of those elements has to be proven beyond a reasonable doubt, and again let me reiterate. This does not deal with two separate crimes just because there are two separate statutes. There is only one crime and that's larceny by receiving stolen property, and the receiving part, part of the receiving statute which the state has alleged is that the property was retained knowing it was stolen. So there is just one crime even though there are two statutes mentioned. That's larceny by receiving stolen property."

The court then stated the general definition of larceny as it appears in General Statutes § 53a-119[8] and instructed the jury on its elements, followed again by the statutory definition of receiving stolen property as contained in § 53a-119 (8) and elaboration on its elements. In charging the jury on the

[8] General Statutes § 53a-119 provides: "LARCENY DEFINED. A person commits larceny when, with intent to deprive another of property or to appropriate the same to himself or a third person, he wrongfully takes, obtains or withholds such property from an owner. . . ."

crime of larceny, in which intent is an element, the court gave some preliminary instructions on intent,[9] then said: "Under our law every person is presumed to intend the natural consequences of his act. Accordingly you may know a person's intent by his acts or by his words, and so larceny by receiving really consists, is defined and really consists of three elements: There must be a retention or withholding. . . . The withholding, the retention, must be wrongful. . . . The retention must be with the intent to deprive the owner of the use and benefit of the property or to appropriate it to the use of the taker or a third person." The court then proceeded to discuss the elements of receiving stolen property which do not include intent but do include the element of knowledge.[10]

[9] "Now, intent to deprive another of property. What do we mean by intent? Intent is a mental operation which can be proved usually by the facts and circumstances surrounding, leading up to and following the events in question. Intent is basically a subjective element, the operation of a person's mind. We cannot x-ray a person's mind to determine what he's thinking. However, experience has shown that in determining the question of intent you may simply consider all the facts and circumstances surrounding and leading up to and following the events in question and from that you may determine what a person intended. Obviously you can't look into a person's head and determine what his intention was. It's very obvious that the only way you can determine intention is from the surrounding circumstances."

[10] "Now, knowingly, what does that mean? A person acts knowingly with respect to conduct or to circumstances described by a statute defining an offense when he is aware his conduct is of such nature or that such circumstance exists. That is to say, a person to act knowingly must act consciously, deliberately and willfully, being fully aware that his act is wrong.

Now, I have said that the state must prove beyond a reasonable doubt that the defendant retained stolen property knowing or believing that it was probably stolen. You will note from that that the state does not have to prove that the defendant had actual knowledge that the property was stolen. Of course, if you find that the evidence supports beyond a reasonable doubt that the defendant had actual

314

The court summed up its instructions with the following statement: "Therefore, if you should find proven beyond a reasonable doubt that on the 12th day of October, 1976, that this property was stolen, the property that you have seen come into evidence, and that the defendant retained it knowing or believing that it had probably been stolen and that he did not retain it with the purpose of restoring it to the owner, then you would be justified in finding him guilty of the crime of larceny by receiving stolen property. So you have to find three elements: It was stolen, that he knew it was stolen or knew it was probably stolen, and he didn't retain it with the purpose of restoring it to the rightful owner. Now, on the other hand, if after reviewing all the evidence in this case you should

knowledge that the property was stolen you will obviously in that event return a verdict of guilty, provided the state proves all the other necessary elements in accordance with the charge. The state must, however, only prove that the defendant received or that he retained the property knowing that it had probably been stolen. You may find that he knew it was stolen but the only obligation or burden that the state has is that he knew it was probably stolen.

Now, the bald fact that stolen property is found in the possession of a person is not sufficient evidence to warrant a conviction unless the state proves beyond a reasonable doubt that the defendant retained the property knowing or believing that it had probably been stolen. In other words, ladies and gentlemen, it is not criminal to receive or retain stolen property unless it's done knowingly. So that at the time he retained it he must have known that it was stolen.

Now, that knowledge, whether or not the property was stolen, can be either actual or inferred. It may be proven by direct evidence or it may be inferred from all the circumstances of the case but the circumstances must be such as to satisfy you beyond a reasonable doubt that the defendant retained the property knowing or believing that the property had probably been stolen. Now, ordinarily whether a person knows or believes that property has probably been stolen can be established only through the circumstances and through inferences from other proven facts and circumstances. In other words, it is for you to determine from all the evidence and from any inferences that you derive from proven facts whether the defendant knew or believed that the property had probably been stolen."

find that one of the elements has not been proved or that you have reasonable doubt as to the guilt of the defendant, you obviously must find the defendant not guilty of the charge and acquit him."

The defendant claims these instructions violated his right to due process under the fourteenth amendment to the United States constitution because a reasonable juror could have interpreted the court's instructions on intent as creating a conclusive rather than a permissive presumption. *Sandstrom* v. *Montana,* 442 U.S. 510, 99 S. Ct. 2450, 61 L. Ed. 2d 39 (1979); *State* v. *Arroyo,* supra, 173–75; *State* v. *Harrison,* 178 Conn. 689, 695–96, 425 A.2d 111 (1979). The court's use of the word "presumed" was preceded by instructions that limited the jury's finding of intent to an inference from surrounding circumstances, followed by the words "you *may* know," and then followed immediately thereafter by a correct and precise charge on all the elements of § 53a-119 (8). (Emphasis added.) The court's instructions, when considered as a whole, "could not be reasonably construed to require a conclusive presumption or a shifting of the burden of proof and did not deprive the defendant of his due process right to a fair trial. *Sandstrom,* supra; *Ulster County Court* [v. *Allen,* 442 U.S. 140, 99 S. Ct. 2213, 60 L. Ed. 2d 777 (1979) ]; *Harrison,* supra, 697." *State* v. *Arroyo,* supra, 180.

Although neither the briefs nor the record raise the point, intent is not an element of the crime charged in this case. As the court stated, the defendant was charged with larceny by receiving stolen property under General Statutes § 53a-119 (8). None of the elements of this crime includes a specific intent. "It is axiomatic that the

legislature may, if it so chooses, ignore the common-law concept that criminal acts require the coupling of the evil-meaning mind with the evil-doing hand and may define crimes which depend on no mental element, but consist only of forbidden acts or omissions." *State* v. *Husser,* 161 Conn. 513, 515, 290 A.2d 336 (1971). If the legislature may define crimes which depend on no mental element, then it certainly may require an element of knowledge but no specific intent. "If the statute does not include intent or knowledge as an element of the crime, their proof is not necessary." *State* v. *Bitting,* 162 Conn. 1, 5, 291 A.2d 240 (1971); see also *State* v. *Dennis,* 150 Conn. 245, 250–51, 188 A.2d 65 (1963); *State* v. *Gaetano,* 96 Conn. 306, 316–17, 114 A. 82 (1921).

The trial court's instructions on knowledge as an element of the crime charged were competent and have not been attacked by the defendant. Although the court included at the beginning of its charge an instruction on intent which would have been required had the information or bill of particulars not specified subsection (8) of § 53a-119, this instruction was unnecessary and could not have confused the jury on the crime charged. If anything, the court's instructions on intent, which may have embodied a permissive presumption or inference, were too favorable to the defendant because intent was not an element of the crime charged. The court did not err in its instructions to the jury.

There is no error.

In this opinion the other judges concurred.