STATE OF CONNECTICUT *v.* LINDSAY B. JOHNSON

BOGDANSKI, C. J., SPEZIALE, PETERS, HEALEY and PARSKEY, Js.

Argued June 4—decision released August 4, 1981

*Jerrold H. Barnett,* public defender, with whom, on the brief, was *Richard Emanuel,* assistant public defender, for the appellant (defendant).

*Linda K. Lager,* assistant state's attorney, with whom, on the brief, were *Arnold Markle,* state's attorney, and *John T. Redway,* assistant state's attorney, for the appellee (state).

SPEZIALE, J. After a jury trial the defendant was convicted on a four-count information of the crimes of attempted murder, in violation of General Statutes §§ 53a-54a, 53a-49, 53a-8; kidnapping in the second degree, in violation of General Statutes §§ 53a-94, 53a-8; robbery in the first degree, in violation of Public Acts 1975, No. 75-411, §§ 1 (a) (2), 1 (a) (3) (now General Statutes § 53a-134 [a] [2] and [3] ); and sexual assault in the first degree, in violation of Public Acts 1975, No. 75-619, § 3 (a) (now General Statutes § 53a-70 [a] ) and General Statutes § 53a-8. The defendant appeals from the judgment rendered upon the verdict, claiming the trial court erred: (1) in its instructions to the jury on the element of intent, (2) in failing to instruct the jury that the abduction of the victim could be found to have been merely incidental to the commis-

sion of another crime, and (3) in denying the defendant his right to self-representation. None of these claims was raised at trial.

The jury could reasonably have found the following facts: On December 20, 1975, at approximately 10:30 p.m., the female victim dropped her boyfriend off at the Norwalk railroad station and started to return to her home in West Redding. Unfamiliar with Norwalk, and in cold and snowy weather, the victim lost her way. While still in Norwalk, she stopped her car and asked the occupants of another automobile for directions. The defendant, one of the four men in this automobile, offered to ride in her car to show her the way to route 7. When her car arrived at route 7, the defendant pulled the victim to the passenger side of the car and another man from the second automobile entered the victim's car and drove it away. The victim was told that the men needed a car. She was threatened, at various times, with bodily harm, was shown a knife and was told that there was a gun. Sometime later, while still in Norwalk, the second car was abandoned and its other two occupants entered the victim's car. At another stop, a fifth man was picked up. Eventually, the car was driven on the Connecticut Turnpike toward New Haven. Sometime in the early morning hours of December 21, 1975, the vehicle was stopped near an apartment building in the New Haven area. The victim was forced into the building where she was sexually assaulted by all five men. When the victim was returned to her car her hands were bound with wire. The car was driven to a bridge on the New Haven-West Haven line where the defendant forced the victim to run across the bridge. At about the midway point, she and the defendant struggled and he

threw her over the railing. Initially she landed on a pipe outside of the railing, but jumped into the river and went under the water when the defendant pursued her. She managed to elude him by hiding under the bridge. Sometime later she made her way to a nearby residence from which the police were called. The defendant and others were arrested in Norwalk between 5 and 6 a.m. the same morning in or near the victim's car.

# I

## INTENT INSTRUCTIONS

The defendant, relying on *Sandstrom* v. *Montana*, 442 U.S. 510, 99 S. Ct. 2450, 61 L. Ed. 2d 39 (1979), claims that the trial court's instructions to the jury on the element of intent, which included the statement that "every person is conclusively presumed to intend the natural and necessary consequences of his act," violated his constitutional rights. On a number of recent occasions this court has considered jury instructions alleged to violate the rule of *Sandstrom*. *State* v. *Stankowski*, 184 Conn. 121, 149–50, 439 A.2d 918, cert. denied, 454 U.S. 1052, 102 S. Ct. 596, 70 L. Ed. 2d 588 (1981); *State* v. *Brokaw*, 183 Conn. 29, 33–34, 438 A.2d 815 (1981); *State* v. *Truppi*, 182 Conn. 449, 452–65, 438 A.2d 713 (1980), cert. denied, 415 U.S. 941, 101 S. Ct. 2024, 68 L. Ed. 2d 329 (1981); *State* v. *Nemeth*, 182 Conn. 403, 411, 438 A.2d 120 (1980); *State* v. *Theriault*, 182 Conn. 366, 375–80, 438 A.2d 432 (1980); *State* v. *Vasquez*, 182 Conn. 242, 245–53, 438 A.2d 424 (1980); *State* v. *Maselli*, 182 Conn. 66, 75–78, 437 A.2d 836 (1980), cert. denied, 449 U.S. 1083, 101 S. Ct. 868, 66 L. Ed. 2d 807 (1981); *State* v. *Perez*, 181 Conn. 299, 311–15, 435 A.2d 334 (1980); *State* v. *Ruth*, 181 Conn. 187, 200–201, 435 A.2d 3 (1980); *State* v. *Arroyo*,

180 Conn. 171, 173–82, 429 A.2d 457 (1980); *State* v. *Harrison*, 178 Conn. 689, 693–99, 425 A.2d 111 (1979). This case, however, involves jury instruction language not previously considered by this court.

In the ordinary case we would refuse to review error claimed in jury instructions which, as here, was not brought to the attention of the trial court. Practice Book §§ 315, 3063. We have, however, previously held that because the type of error claimed falls within the "exceptional circumstances" rule of *State* v. *Evans*, 165 Conn. 61, 69–70, 327 A.2d 576 (1973), we will review it despite the lack of objection and exception below. *State* v. *Vasquez*, supra, 245–46; *State* v. *Maselli*, supra, 75; *State* v. *Perez*, supra, 311; *State* v. *Arroyo*, supra, 173–74.

In *Sandstrom* v. *Montana*, supra, the United States Supreme Court held that a jury instruction that "[t]he law presumes that a person intends the ordinary consequences of his voluntary acts" violated the defendant's due process rights because a reasonable jury could have interpreted the instruction as a burden-shifting presumption like that invalidated in *Mullaney* v. *Wilbur*, 421 U.S. 684, 95 S. Ct. 1881, 44 L. Ed. 2d 508 (1975), or as a conclusive presumption like those invalidated in *United States* v. *United States Gypsum Co.*, 438 U.S. 422, 98 S. Ct. 2864, 57 L. Ed. 2d 854 (1978), and *Morissette* v. *United States*, 342 U.S. 246, 72 S. Ct. 240, 96 L. Ed. 288 (1952). *Sandstrom*, supra, 517–24. The rule of *Sandstrom*, however, must not be oversimplified. *State* v. *Arroyo*, supra, 175. *Sandstrom* does not invalidate, for example, the use of an "entirely permissive inference or presumption, which allows—but does not require—the trier of fact to infer the elemental fact from proof by the

prosecutor of the basic one and that places no burden of any kind on the defendant." *Ulster County Court* v. *Allen*, 442 U.S. 140, 157, 99 S. Ct. 2213, 60 L. Ed. 2d 777 (1979); *State* v. *Arroyo*, supra. The use of the word "presume" by itself does not render an instruction invalid under *Sandstrom. State* v. *Arroyo*, supra. Rather, it is the "lack of qualifying instructions as to the legal effect of the presumption," making it possible for a reasonable jury to interpret the presumption as conclusive or burden-shifting, which renders the instruction unconstitutional. *Sandstrom*, supra, 517. In a number of cases this court has found no error in instructions containing language similar to that invalidated in *Sandstrom* because the challenged instructions contained other language not present in the *Sandstrom* instructions which was sufficiently precise or elaborate so that the jury would not have applied the instructions in an unconstitutional manner. *State* v. *Stankowski*, supra, 151; *State* v. *Truppi*, supra, 461–63; *State* v. *Nemeth*, supra, 411; *State* v. *Vasquez*, supra, 249–53; *State* v. *Maselli*, supra, 75–78; *State* v. *Perez*, supra, 315; *State* v. *Arroyo*, supra, 179–80.

In examining a jury instruction to determine how a reasonable jury could have interpreted it; *Sandstrom*, supra, 514; we look at the charge as a whole, and will not sever one portion and analyze it in isolation from the rest. *State* v. *Truppi*, supra, 458; *State* v. *Vasquez*, supra, 246; *State* v. *Harrison*, supra, 693. Although general instructions on the state's burden of proof and the defendant's presumed innocence do not by themselves cure an otherwise invalid instruction; *Sandstrom*, supra, 518–19 n.7; *State* v. *Harrison*, supra, 697; general

instructions may be considered together with other instructions in determining whether the jury could have interpreted the charge in an impermissible manner. *State* v. *Vasquez,* supra, 251. In evaluating a jury charge to determine whether a *Sandstrom* error has been corrected, the proper consideration is whether the charge, taken as a whole, "clearly delineates the state's burden of proof on every element, including intent" so that "the potential for confusing the jury is sufficiently reduced." *State* v. *Harrison,* supra, 697.

Prior to instructing the jury regarding the elements of the four crimes with which the defendant was charged and the specific criminal intent required for attempted murder, kidnapping in the second degree, and robbery in the first degree, the trial court provided the jury with a number of general instructions, including a general instruction on intent. It described these instructions as "general comments and principles which form a necessary part of every charge." The jury were told that it was the trial court's duty to state the rules of law applicable to the case and that such statements of law were binding on them. They were also instructed that it was the jury's duty to find the facts and that they were "the sole judges of what the facts are." The jury were instructed on the defendant's presumed innocence, the state's obligation to prove every element of the crimes charged and the state's burden of proving those elements beyond a reasonable doubt. The general instructions contained an explanation of circumstantial evidence and how the jury could draw "reasonable and fair conclusions or inferences" from such evidence. Previously the jury had been told that the evidence that they were to consider included not

only the testimony heard and exhibits offered but "any reasonable inferences which you may draw therefrom. You may draw reasonable inferences from the established facts in the case. The inference which you draw, however, must not be from a guess upon the evidence or a surmise upon the evidence, but it must be from a fact which the evidence has established. Inferences that you may draw from these established facts must be logical and reasonable and well-founded upon facts which have been proven in the trial of this case."

In its general instructions, the trial court described intent as "[o]ne of the elements common to each of the four charges in the information" and promised to "discuss this in more detail as I explain the elements of each offense to you." It went on to state: "The question of intent should cause you no great concern because intent is a question of fact that is solely within your province as jurors. However, you should be aware of a rule of law that will be helpful to you and that is that a person's intention may be inferred from his conduct and every person is *conclusively presumed* to intend the natural and necessary consequences of his act." (Emphasis added.)

The initial question for this court is whether the general instructions, taken as a whole, were erroneous under *Sandstrom*. If the challenged instructions violate the rule of *Sandstrom,* they must do so solely because of the occurrence of the word "conclusively." Had these instructions been cast in terms of a mere presumption rather than a conclusive presumption, the apparent *Sandstrom* violation would have been cured by the remainder of the general instructions. Those other instructions pre-

cisely and elaborately delineated the nature of the inferences the jury could draw and the state's burden on each element. They, therefore, would have prevented the jury from interpreting the presumption in an unconstitutional manner. *State* v. *Stankowski,* supra, 151; *State* v. *Truppi,* supra, 461–63; *State* v. *Nemeth,* supra, 411; *State* v. *Vasquez,* supra, 249–53; *State* v. *Maselli,* supra, 75–78; *State* v. *Perez,* supra, 315; *State* v. *Arroyo,* supra, 179–80.

The challenged instruction was cast expressly as a conclusive presumption. While the use of the word "presume" by itself is ambiguous as to whether the presumption is permissive, mandatory, burden-shifting, or conclusive, there can be no serious question as to how the challenged instruction could have been interpreted. Thus, even though the trial court's general instructions, taken as a whole, were precise, elaborate and cast in highly permissive language, it cannot be said those instructions were sufficient to prevent the jury from interpreting the presumption in the way it was expressed to them. The general instructions, therefore, were invalid under *Sandstrom* because they contained an express conclusive presumption. The unconstitutional effect of such a presumption, unless elsewhere cured, would be to deny the defendant a fair trial by requiring or directing the jury to find against the defendant on the element of intent, thus invading the fact-finding function of the jury. *Sandstrom,* supra, 521–23; *United States* v. *United States Gypsum Co.,* 438 U.S. 422, 435, 446, 98 S. Ct. 2864, 57 L. Ed. 2d 854 (1978).

The conclusion that the trial court's general instructions were erroneous under the rule of *Sandstrom* does not, however, dispose of the defendant's

claim of error because it is still necessary to consider the impact of the erroneous general instructions on the specific instructions given on each count. Although the general instructions would normally be incorporated, where applicable, in the court's specific instructions, the actual instructions on each count must be examined to determine whether the *Sandstrom* error in the general instructions was repeated, incorporated, or possibly cured by the specific language used. *State v. Truppi,* supra.

## A

### First Count—Attempted Murder

In its specific instruction on the crime of attempted murder, the trial court properly told the jury that one of the elements of the crime that the state had to prove beyond a reasonable doubt was that the defendant had "the specific intent to commit murder." The jury was told that in considering the question of the defendant's intent "no one can look into a man's mind and see what his intention is. The only way to decide that question is to infer from the accused's conduct in the light of the surrounding circumstances." At this point, the trial court repeated its erroneous instruction "as previously stated," that "every person is *conclusively presumed* to intend the natural and necessary consequences of his act." (Emphasis added.) While the trial court later somewhat undercut its conclusive language by telling the jury "[i]f you believe [the victim's] version as to the defendant's conduct at the bridge, you *may presume* he intended what would be the natural and necessary consequences of his actions," this language cannot overcome the express conclusive presumption repeated in the

instructions on this count. (Emphasis added.) Because the instructions on the first count contained the express language previously found offensive under *Sandstrom,* the defendant's conviction on this count must be reversed.

## B

### SECOND COUNT—KIDNAPPING

In its specific instruction on the crime of kidnapping in the second degree, the trial court properly explained the element of intent applicable to that crime and told the jury that "a person acts intentionally with respect to a result or to conduct described by a statute defining an offense when his conscious objective is to cause such result or to engage in such conduct." At this point the trial court stated that "I have already instructed you that what a man's intention has been is necessarily very largely a matter of *inference.* Again, no witness can be expected to come here and testify that he looked into another man's mind and saw therein a certain intention. The *only way* in which you can determine in a case such as this what a man's intention was at any given time is by determining what his conduct was and what the circumstances were surrounding that conduct and from those *infer* what his intention was. As stated before, to draw such an inference is not only the privilege but also the duty of a juror *provided,* of course, *the inference to draw is a reasonable inference."* (Emphasis added.)

The trial court's instruction on the second count neither used the offending language of the general instruction nor expressly incorporated it. In fact,

these specific instructions were cast solely in prop-
erly permissive language. In the absence of the
phrase "conclusively presumed," the highly permis-
sive language of this instruction, expressed in terms
of inference rather than presumption, had a sig-
nificant curative effect. *State* v. *Vasquez,* supra,
249; *State* v. *Arroyo,* supra, 178–80. The *Sandstrom*
error of the court's general instruction was cured
by the specific instruction given by the court. In
considering the defendant's guilt on the second
count the jury would have applied the permissive
inferences described to them in the specific instruc-
tions on that count rather than the improper pre-
sumption described in general terms earlier. There-
fore, there was no error in the trial court's instruc-
tions on this count.

## C

### Third Count—Robbery

In its specific instructions on the crime of rob-
bery in the first degree the trial court properly
explained the element of intent applicable to that
crime but offered no explanation to the jury on how
to ascertain this intent. It did not repeat the offend-
ing language of the general instruction or expressly
incorporate it. Such repetition or express incorpo-
ration would have rendered the specific instruc-
tions invalid as indicated in our discussion of the
instruction on intent to commit attempted murder.
The intent instruction on the third count, robbery,
is similar in one respect to the one given on the
second count, kidnapping, which we upheld: neither
one repeated or expressly incorporated the erro-
neous instructions. The general instructions in the
two counts differ in that the kidnapping instruction
contained highly permissive and ultimately cura-

tive language but the robbery instruction contained no such language. In the absence of such additional instructions on the third count, the question for us to decide is whether the robbery instructions implicitly incorporated the erroneous general instructions or retained the curative effect of the intent language contained in the immediately preceding instructions on the second count, kidnapping.

As a practical matter, the curative effect of the preceding instructions would probably be more important in the jury's consideration than the earlier erroneous instruction; however, we cannot assume this to be the case. In *State* v. *Arroyo,* supra, 177–80, for example, this court approved the trial court's instruction on the first count, even though cast in terms of a presumption of intent from consequences, because of additional curative language, but held invalid the same language in instructions on a lesser included offense because of the absence of the additional language. We concluded that "it cannot be assumed that the court's instructions on intent as an element of murder would have been applied to such an extent that the jury unquestionably would have considered them in conjunction with the court's instructions on intent as an element of manslaughter." Id., 181. Similarly, in *State* v. *Truppi,* supra, 461–63, this court upheld one of three counts affected by an erroneous general instruction because of additional curative language in the instructions on that count, but would not assume that this curative language was considered on the other counts where it did not appear. Therefore, because we cannot assume the curative language of the instructions on the second count carried over to the instructions on the third, we must assume the taint of the erroneous general

instructions remained. Because it is reasonably possible that the jury based its conclusion on intent to commit robbery on the erroneous general instructions, the conviction on this count must be reversed.

## D

### FOURTH COUNT—SEXUAL ASSAULT

The impact of the erroneous general instruction on the defendant's conviction on the charge of sexual assault in the first degree must be analyzed in a way much different from our analysis of its impact on the first three counts. While each of those counts involved specific intent crimes, sexual assault in the first degree is a general intent crime with no element of specific intent. *State* v. *Truppi,* supra, 454–55, 455n. The trial court's instruction on this count, therefore, did not mention intent as an element and did not incorporate the erroneous general instructions.[1] Thus, there is no *Sandstrom* error in the conviction on this count. Id.; *State* v. *Perez,* supra, 315–16.[2]

---

[1] The defendant maintains that because the general instructions included the statement that intent was "[o]ne of the elements common to each of the four charges," the erroneous instruction did impact on the fourth count and distinguishes this case from *State* v. *Truppi,* 182 Conn. 449, 438 A.2d 713 (1980); however, this brief and isolated reference by the trial court cannot add an element of specific intent to the crime of sexual assault in the first degree. The trial court may have misspoke or it may have been indicating that one of the lesser included offenses on this count included a form of specific intent as an element. The trial court may also have been referring to the general criminal intent required for virtually all crimes. In any event, its general reference to intent as an element of the fourth charge did not make it so. Id.; see *State* v. *Perez,* 181 Conn. 299, 315–16, 435 A.2d 334 (1980).

[2] The defendant argues that one of the lesser included offenses on the fourth count, sexual assault in the third degree, includes the element of sexual gratification, a specific criminal intent, which, therefore, incorporated the erroneous general instructions within the specific instructions on the fourth count. We do not need to

## II

## "INCIDENTAL" KIDNAPPING INSTRUCTION

The defendant also claims error in the trial court's failure to instruct the jury on the second count that they could find that the victim's abduction was merely incidental to the commission of another crime and, thus, would not support a conviction of kidnapping in the second degree. The defendant did not request that the trial court give the instruction he now claims was reversible error not to give. Nor did the defendant enter an objection and exception to the instructions given on the ground raised here. This court will not review alleged errors in jury instructions where, as here, no exception was taken in the trial court; Practice Book §§ 315, 3063; *State* v. *Malley,* 167 Conn. 379, 383, 355 A.2d 292 (1974); unless such error is "plain error" which we should consider under § 3063 of the Practice Book or falls within the "exceptional circumstances" rule of *State* v. *Evans,* 165 Conn. 61, 69–70, 327 A.2d 576 (1973). Because of the express language of the kidnapping statute, General Statutes § 53a-94, this court has consistently rejected all attempts to adopt the merger doctrine of *People* v. *Levy,* 15 N.Y.2d 159, 204 N.E.2d 842, cert. denied, 381 U.S. 938, 85 S. Ct. 1770, 14 L. Ed. 2d 701 (1965). *State* v. *Briggs,* 179 Conn.

consider this claim, however, because the trial court's instructions made clear that the jury was not to consider lesser included offenses until they had found the defendant not guilty of the greater offense. Because the defendant was found guilty of the original offense charged, the lesser included offense was not even considered by the jury. A *Sandstrom* error in an instruction not considered by the jury is harmless. *State* v. *Ruth,* 181 Conn. 187, 200–201, 435 A.2d 3 (1980).

328, 338–39, 426 A.2d 298 (1979), cert. denied, 447 U.S. 912, 100 S. Ct. 3000, 64 L. Ed. 2d 862 (1980); *State* v. *Lee,* 177 Conn. 335, 342–44, 417 A.2d 354 (1979); *State* v. *Chetcuti,* 173 Conn. 165, 170, 377 A.2d 263 (1977); *State* v. *Dubina,* 164 Conn. 95, 99–100, 318 A.2d 95 (1972). In Connecticut a defendant may be convicted of second degree kidnapping as well as other felonies arising out of the same incident "as long as the state was able to prove, beyond a reasonable doubt, all of the essential elements of each crime." *State* v. *Briggs,* supra.

Thus the charge which the defendant claims the trial court erred in failing to give is not even an accurate statement of Connecticut law. *State* v. *Chetcuti,* supra, 170–71. The defendant has failed to demonstrate that because the trial court failed to instruct the jury on this issue, he was deprived of a "fundamental constitutional right and a fair trial." *State* v. *Evans,* supra, 70. The error claimed by the defendant is neither plain error nor does it fall within the *Evans* rule. It is, therefore, not reviewable by this court.

## III

### DENIAL OF RIGHT TO SELF-REPRESENTATION

Finally, the defendant claims that he was erroneously denied his constitutional right to represent himself as guaranteed by *Faretta* v. *California,* 422 U.S. 806, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975), and the constitution of Connecticut, article first § 8. This claim arises out of a series of incidents in which the defendant expressed dissatisfaction with his court-appointed counsel. The defendant's

expressions became so disruptive that during the trial he had to be removed from the courtroom. At a later point the defendant returned to the courtroom and expressly asked to be allowed to represent himself so that he could call Judge Jon O. Newman to testify about his then-recent decision in *United States* v. *Robinson,* 421 F. Sup. 467 (D. Conn. 1976), rev'd sub nom. *United States* v. *Newman,* 549 F.2d 240 (2d Cir. 1977) relating to the prosecutorial use of preemptive challenges to jurors on racial grounds. The trial judge in granting the defendant's request to represent himself put his trial counsel on standby status. Practice Book § 961. The defendant was advised, however, that because the prosecution was still presenting its case, no defense witnesses would be called at that time. During this colloquy there was some discussion indicating that the defendant, acting pro se, could not himself subpoena Judge Newman, but the judge left the possibility of calling Judge Newman open if the defendant could express sufficient reason to call him. At this point the defendant became disruptive again and had to be removed from the courtroom. He did not return for the rest of the trial.

Our review of the record reveals that the defendant was not deprived of his right to self-representation by the actions of the trial court. In fact, the trial court scrupulously protected those rights. Indeed, it was the defendant himself, through his disruptive behavior, who forfeited his right to self-representation. Practice Book §§ 892, 965; see *Faretta* v. *California,* supra, 834 n.46.

There is error in part. There is no error and the judgment is affirmed as to the second and fourth counts charging kidnapping in the second degree

and sexual assault in the first degree. There is error as to the first and third counts charging attempted murder and robbery in the first degree; and as to those counts only, the judgment is set aside and a new trial is ordered.

In this opinion the other judges concurred.