## STATE OF CONNECTICUT *v.* JOSE MARTI
### (AC 24304)

Dranginis, Bishop and West, Js.

Argued February 23—officially released May 24, 2005

 

 

*William B. Westcott,* special public defender, for the appellant (defendant).

*Leon F. Dalbec, Jr.,* senior assistant state's attorney, with whom, on the brief, were *James E. Thomas,* state's attorney, and *Victor Carlucci, Jr.,* senior assistant state's attorney, for the appellee (state).

### Opinion

DRANGINIS, J. The defendant, Jose Marti, appeals from the judgment of conviction, rendered after a conditional plea of nolo contendere, of possession of narcotics with intent to sell in violation of General Statutes § 21a-278 (b) and possession of narcotics with intent to sell within 1500 feet of a public school in violation of General Statutes § 21a-278a (b). On appeal, the defendant claims that the trial court improperly denied his motion to suppress certain physical evidence and statements that he made to the police. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to our resolution of the defendant's appeal. On the afternoon of October 5, 2001, Ramon Baez and Patricia Beaudin, detectives with the vice and narcotics division of the Hartford police department, accompanied by Ezequiel Laureano, a detective with the Hartford police department who was assigned to the federal Drug Enforcement Administration, responded to an informant's telephone call that drugs were being packaged by three individuals, "Che," "Pichi" and "Mr. Roman," in an apartment at 230 Jefferson Street in Hartford. The

informant had contacted Baez and Beaudin in the past and proved to have "good information." In response to the informant's call, the three detectives planned to set up surveillance of 230 Jefferson Street. Their sole stated purpose in setting up surveillance was to identify the individual who went by the street name "Che." They traveled in two cars, with Baez and Beaudin in one car and Laureano in a second car. As they approached the apartment building, either Baez or Beaudin received another call from the informant, who indicated that "Che" was leaving the building in a gray Ford Taurus with Massachusetts license plates. The informant previously had indicated to Baez and Beaudin that this car regularly was used to transport drugs, although Baez could not recall whether the informant told him that drugs were in the vehicle on this particular date. Unbeknownst to the informant, Baez and Beaudin had set up surveillance of the vehicle and its driver because they had reason to believe that the vehicle was involved in the transportation of narcotics and had been tracking it for the two weeks preceding the incident at issue. At that time, they knew the driver only as "Che," and they did not ascertain that he was the defendant until they identified him on the afternoon of October 5, 2001.

Baez transmitted to Laureano the information that the car was leaving 230 Jefferson Street as he saw the car leave the driveway. Baez indicated to Laureano that he was making a U-turn in order to follow the car, and Laureano did the same. Because of that change in direction, Laureano was directly behind the vehicle, and Baez and Beaudin followed Laureano. Although they suspected that the car's destination was 55 Allen Place, they wanted to follow it in order to be certain. They believed that the car was destined for 55 Allen Place because they previously had discovered that the car was registered to the defendant, who resided at 55 Allen Place.

The defendant drove his vehicle into the driveway at 55 Allen Place and around to the back of the house, where there was a parking area. The rear of the driveway and the entire house were surrounded by a large fence, although there was no gate to bar entry into the driveway. Laureano drove into the driveway and parked his car behind the defendant's vehicle. As he got out of his car and began to approach the defendant's vehicle, Baez and Beaudin drove into the driveway and parked behind Laureano's vehicle. Beaudin approached the defendant's vehicle from the back, and Baez and Laureano approached the driver's side of the vehicle. Baez asked the defendant for his license and registration. The defendant handed his license to Baez, but when he reached over to the glove box to retrieve his registration, Baez saw some heat sealed bags containing what looked like narcotics showing from underneath the front passenger's seat. Baez ordered the defendant out of the car and patted him down. Baez found bags containing what appeared to be heroin in one of the defendant's pockets. As a result of the patdown and the search of the vehicle, Baez discovered in the defendant's possession 340 heat sealed bags containing what later was determined to be heroin. Baez arrested the defendant and eventually brought him to the federal building on Main Street in Hartford for questioning, where he gave a confession. The defendant subsequently was charged with possession of narcotics, possession of narcotics with intent to sell and possession of narcotics with intent to sell within 1500 feet of a public school.

The defendant entered a plea of not guilty on all charges and filed a motion to suppress the bags of heroin discovered on his person and in his vehicle, as well as the confession he gave following his arrest. The defendant claimed that (1) the area in which the police approached him and ordered him out of his vehicle

constituted the curtilage of his home and, therefore, he had a reasonable expectation of privacy in that area so that the police could not stop him without a warrant,[1] (2) even if he did not have a reasonable expectation of privacy in his driveway, the police still did not have a reasonable and articulable suspicion that a crime was being committed because there was no evidence that the informant was reliable and had indicated to the police that the defendant had drugs with him in the vehicle, and (3) identification alone, without additional investigation, was not a sufficient reason to conduct a stop pursuant to *Terry* v. *Ohio*, 392 U.S. 1, 21–22, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968). The court concluded that there was no heightened expectation of privacy in the open driveway. The court also found that the informant had indicated to Baez that narcotics were in the defendant's car as the defendant was leaving Jefferson Street. The court concluded that on the basis of the information relayed by the informant and the information Baez and Beaudin had gleaned from their observations of the defendant several weeks prior to the incident at issue, the police "had a reasonable and articulable suspicion to stop [the defendant] not for the purpose of identifying him, but for the purpose of determining whether or not there were drugs in the vehicle."[2] The court, therefore, denied the defendant's motion to suppress. The defendant subsequently entered a conditional plea of nolo contendere pursuant to General Statutes § 54-94a, reserving the right to appeal from the denial of his motion to suppress. This appeal followed.

---

[1] On appeal, the defendant does not challenge the court's conclusion that the area was not part of the curtilage of the defendant's home where he would have a reasonable expectation of privacy.

[2] The court also concluded that the police had probable cause to stop the defendant. Because we affirm the court's decision on the ground that there existed a reasonable and articulable suspicion, we need not determine whether the court properly concluded that probable cause existed.

The defendant claims that the court's finding that the informant had indicated to Baez that the defendant was leaving 230 Jefferson Street with drugs in the car is unsupported by the record and, therefore, clearly erroneous. In addition to claiming that without that finding, the court could not have concluded that the stop of his vehicle was supported by a reasonable and articulable suspicion of criminal activity, the defendant also claims that such a stop cannot be valid when the sole purpose of the police in stopping him was to identify him.

We first set forth our standard of review. "Our standard of review of a trial court's findings and conclusions in connection with a motion to suppress is well defined. A finding of fact will not be disturbed unless it is clearly erroneous in view of the evidence and pleadings in the whole record . . . . [W]here the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts set out in the memorandum of decision . . . ." (Internal quotation marks omitted.) *State* v. *Hernandez*, 87 Conn. App. 464, 469, 867 A.2d 30, cert. denied, 273 Conn. 920, 871 A.2d 1030 (2005).

I

The defendant first claims that the court improperly concluded that the police had a reasonable and articulable suspicion of criminal activity to justify the stop. Specifically, the defendant claims that in drawing that conclusion, the court improperly found that the informant had indicated to Baez that the defendant was leaving 230 Jefferson Street with drugs in the car, a finding lacking support in the evidence.

"The federal and state law of search and seizure in this area is well settled. Under the fourth amendment to the United States constitution and article first, [§ 7] . . . of our state constitution, a police officer is permitted in appropriate circumstances and in an appropriate

manner to detain an individual for investigative pur-
poses if the officer believes, based on a reasonable and
articulable suspicion, that the individual is engaged in
criminal activity, even if there is no probable cause to
make an arrest. . . .

"Reasonable and articulable suspicion is an objective
standard that focuses not on the actual state of mind of
the police officer, but on whether a reasonable person,
having the information available to and known by the
police, would have had that level of suspicion. . . .
Thus, [r]easonable and articulable suspicion is . . .
based not on the officer's inchoate and unparticularized
suspicion or hunch, but [on] the specific reasonable
inferences which he is entitled to draw from the facts
in light of his experience. . . . What constitutes a rea-
sonable and articulable suspicion depends on the total-
ity of the circumstances. . . . The determination of
whether a specific set of circumstances provides a
police officer with a reasonable and articulable suspi-
cion of criminal activity is a question of fact for the trial
court and is subject to limited appellate review. . . .

"An appeal challenging the factual basis of a court's
decision that a reasonable and articulable suspicion
exists requires that we determine, in light of the record
taken as a whole, (1) whether the underlying factual
findings of the trial court are clearly erroneous; and (2)
whether the [court's] conclusion that those facts gave
rise to such a suspicion is legally correct." (Internal
quotation marks omitted.) Id., 470–71.

Here, the defendant challenges the court's finding
that the informant had told Baez that the defendant had
drugs in the car when the defendant left 230 Jefferson
Street. Even if we were to assume that this specific
finding of fact was clearly erroneous, we conclude that
the record as a whole supports the court's ultimate
conclusion that a reasonable and articulable suspicion

of criminal activity existed. In its memorandum of decision, the court explained at length that all the information that the informant gave about the defendant was of even greater importance because of the independent surveillance that Baez and Beaudin had been conducting. For weeks, they had tracked the defendant and his vehicle because of their suspicion that he was involved in drug activity. The record clearly indicates that the informant told Baez that drugs were being packaged inside 230 Jefferson Street and that he telephoned Baez again to tell him that the defendant was leaving the building in the car that already was suspected of being involved in drug activity. Even without the informant specifically saying to Baez that the defendant had drugs with him in the car as he was leaving 230 Jefferson Street, that was an inference Baez reasonably could have drawn on the basis of both the information given to him by the informant and his own independent observations of the defendant. On the basis of the record as a whole, therefore, the court properly found that the facts justified the initial stop.

II

The defendant also claims that regardless of whether there was a reasonable and articulable suspicion of criminal activity, the stop was not valid because the purpose of the stop was to identify him, not to conduct a further investigation of the criminal activity suspected of taking place. We disagree.

In evaluating the defendant's claim, we are aware of many cases recognizing the identification of a suspect as a reasonable and permissible objective of an investigatory stop. See, e.g., *Hiibel* v. *Sixth Judicial District Court of Nevada*, 542 U.S. 177, 124 S. Ct. 2451, 2458, 159 L. Ed. 2d 292 (2004) ("[o]ur decisions make clear that questions concerning a suspect's identity are a

routine and accepted part of many *Terry* stops"); *Hayes* v. *Florida,* 470 U.S. 811, 816, 105 S. Ct. 1643, 84 L. Ed. 2d 705 (1985) ("if there are articulable facts supporting a reasonable suspicion that a person has committed a criminal offense, that person may be stopped in order to identify him, to question him briefly, or to detain him briefly while attempting to obtain additional information"); *United States* v. *Hensley,* 469 U.S. 221, 229, 105 S. Ct. 675, 83 L. Ed. 2d 604 (1985) ("where police have been unable to locate a person suspected of involvement in a past crime, the ability to briefly stop that person, ask questions, or check identification in the absence of probable cause promotes the strong government interest in solving crimes and bringing offenders to justice"); *Adams* v. *Williams,* 407 U.S. 143, 146, 92 S. Ct. 1921, 32 L. Ed. 2d 612 (1972) ("[a] brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time").[3]

Here, the decision to detain the defendant was predicated on the reasonable and articulable suspicion that the defendant was involved in drug activity and likely was transporting drugs in his vehicle at the time. It therefore would have been constitutionally permissible for the police to stop the defendant and further investigate whether he was transporting narcotics at that time. In investigating the situation further, it would have been constitutionally permissible for the police to conduct a patdown search for weapons; see *State* v. *Trine,* 236 Conn. 216, 225–26, 673 A.2d 1098 (1996); and request

[3] We also note that General Statutes § 14-217 prohibits a motorist stopped by a peace officer from refusing to furnish that officer with proof of identity. See *State* v. *Perez,* 181 Conn. 299, 304, 435 A.2d 334 (1980); *State* v. *Anderson,* 24 Conn. App. 438, 446, 589 A.2d 372, cert. denied, 219 Conn. 903, 593 A.2d 130 (1991).

that the defendant keep his hands where they could be seen. See *State* v. *Marino*, 17 Conn. App. 677, 683, 555 A.2d 455, cert. denied, 211 Conn. 803, 559 A.2d 1138 (1989). Of course, the police, in furthering an investigation, also may ask questions of the individual suspected of criminal activity and draw on their direct observations at the scene. Although it is true that at trial, all three detectives indicated that the main purpose of the stop was to identify the defendant, that identification fell within the scope of their broader investigation of the defendant's drug activity. It would contravene common sense to suggest that an otherwise constitutionally permissible stop was rendered impermissible merely because the police sought to conduct less of an investigation than they were permitted to conduct under the circumstances.

The judgment is affirmed.

In this opinion the other judges concurred.