UNITED STATES of America, Appellee,

v.

**Timothy M. DWYER,
Defendant, Appellant.**

No. 87–1786.

United States Court of Appeals,
First Circuit.

Heard Jan. 5, 1988.
Decided April 4, 1988.

Robert B. Mann, Providence, R.I., for defendant, appellant.

Margaret E. Curran, Asst. U.S. Atty., with whom Lincoln C. Almond, U.S. Atty., Providence, R.I., was on brief for appellee.

Before COFFIN, ALDRICH and BREYER, Circuit Judges.

BAILEY ALDRICH, Senior Circuit Judge.

Defendant Dwyer and three others (Finley, Wing and Romeyn) were indicted charged with defrauding a federally insured bank, 18 U.S.C. § 1014, and conspiracy, 18 U.S.C. § 2. Defendants were to be tried separately because of possible *Bruton* problems (*Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968)), and Dwyer was selected to be first, with Romeyn, who had made a plea agreement involving a smallish sentence, testifying against him. There were seven counts, one for a general conspiracy, the others being devoted to six false invoices subscribed to by Dwyer for work he knew had not been done. He was found guilty on all counts, and there is no question as to the sufficiency of the evidence. There are, however, a number of questions.

I

Dwyer's first complaint is to the court's refusal to charge with respect to multiple conspiracies. The government appears to concede that this was error, and argues lack of prejudice sufficient to merit reversal. We are not at all sure that there was error, but if there was, we agree it was harmless.

It is true that if the facts indicate a possibility of there being more than one conspiracy there is normally a question for

the jury, *United States v. Brown*, 495 F.2d 593, 598 (1st Cir.), *cert. denied*, 419 U.S. 965, 95 S.Ct. 226, 42 L.Ed.2d 179 (1974), and a multiple conspiracy charge should be given. *United States v. Cambindo Valencia*, 609 F.2d 603, 625 (2d Cir.1979), *cert. denied sub. nom, Prado v. United States*, 446 U.S. 940, 100 S.Ct. 2163, 64 L.Ed.2d 795 (1980). However, the test is not whether every participant was engaged in, or informed of, every activity of a group of individuals, but is whether the differences were so marked that it would be prejudicial to permit a "spillover" against a particular defendant. *Ibid. Compare United States v. Calabro*, 449 F.2d 885 (2d Cir.1971), *cert. denied*, 404 U.S. 1047, 92 S.Ct. 728, 30 L.Ed.2d 735 (1972); *United States v. Glenn*, 828 F.2d 855 (1st Cir.1987). The initial conspiracy claimed here contemplated the submission of false documents to the bank so as to make unwarranted draws upon an open construction loan, and to convert the proceeds for the benefit of all defendants. The government's evidence showed that Dwyer and the three others were parties to the diversion of $600,000 through this scheme, an integral part of which was Dwyer Construction Company invoices in that amount, for work Dwyer conceded he knew had not been done. In these receipts he shared. As matters progressed, the other defendants concocted a method of further defrauding the bank by "piggybacking" on the original procedure, thereby obtaining an additional $800,000 against the mortgage. This they did without informing Dwyer, thus depriving him of a share. When the *Petrozziello* question came up (*United States v. Petrozziello*, 548 F.2d 20 (1st Cir.1977)), in the course of its statements at the bench in finding that a conspiracy existed for purposes of admission of co-conspirator hearsay statements, the court observed,

> [N]ow what is interesting here is that not only did we have a conspiracy of five, but we also had a conspiracy of three and a conspiracy of two, and they were screwing each other all over the place. Mr. Dwyer was on the outside of the other conspiracies, but that is no defense to his participation in this one.

When it came to charging the jury, however, the court refused to charge on multiple conspiracies. Defendant claims that by its own finding the court erred.

However the matter is approached, we think it clear that defendant suffered no harm. The evidence admitted against him by virtue of the *Petrozziello* ruling related to the original phase; nor were subsequent events used in any way to establish his guilt. On the contrary, throughout the case, as early as its opening, the government emphasized that defendant in no way participated, in conduct, or in receipts, from the piggybacking on the original fraud. The court's above-quoted statement, not made to the jury, did not affect its *Petrozziello* ruling, or its scope, and for the court to have charged on the subject of possible multiple conspiracies would have been to introduce a non-issue.

Far more troublesome questions came up in respect to what the court did charge. Two charges—one relating to the credibility of the defendant's testimony and another given by the court, *sua sponte*, to simplify the jury's understanding of a conspiracy—caused cumulative prejudice to the defendant.

■ Including, in haec verba, much of government's request No. 25, the court charged the jury as follows,

> As I told you at the beginning of the case, a defendant cannot be compelled to take the witness stand and testify. Whether or not he testifies is a matter of his own choosing. If he does choose to testify, he is a competent witness in the case. In that event, he is subject to cross-examination and his credibility is for you, the jury, to determine, in the same manner as that of any other witness. Obviously, a defendant has a great personal interest in the result of his prosecution. The interest gives the defendant a strong motive to lie, to protect himself. In appraising his credibility, you may take that fact into consideration, however, I want to say to you with equal force, that it by no means follows that simply because a person has a vital interest in the trial's end result, that he

is not capable of telling a truthful and straightforward story. It is for you to decide to what extent, if at all, the defendant's interest has affected or colored his testimony. It is for you to weigh his credibility and determine the credibility of his testimony.

It is true that this charge is strictly accurate, and has been approved in the Second Circuit. *United States v. Gleason,* 616 F.2d 2, 15 (2d Cir.1979), *cert. denied,* 445 U.S. 931, 100 S.Ct. 1320, 63 L.Ed.2d 764 (1980). At the same time, we note that even the *Gleason* court, in criticizing too free a use by the trial court of its right to comment on the credibility of defendant's witness, observed,

> Confidence in our jury system leads us to leave credibility solely to the jury which, as the conscience of the community, is expected to act with sound judgment. (*Ibid.*)

We believe it wise to apply this general principle to the jury's exercise of its common sense in determining credibility without the need of the court's stating what, to even the most unsophisticated, must be obvious, that the defendant has an interest in the outcome of the case.

There is no possible objection to the court's first four sentences above quoted. Beginning with "Obviously," however, it was, in terms, emphasizing the obvious. A jury might well think that the court had a purpose in stating the obvious even though it followed it up with the necessary safeguard, namely, a purpose unfavorable to the defendant. To quote from our opinion in *Lannon v. Hogan,* 719 F.2d 518, 524 (1st Cir.1983), *cert. denied,* 465 U.S. 1105, 104 S.Ct. 1606, 80 L.Ed.2d 136 (1984), an isolated instruction that may "imply denigration or disbelief of a defendant's testimony," is best avoided even though the implication may be counteracted when the charge is viewed as a whole. A charge containing denigrating implications should not be giv-

en unless it serves some useful purpose or need. We see none here. *See, also, United States v. Standing Soldier,* 538 F.2d 196, 204 (8th Cir.), *cert. denied,* 429 U.S. 1025, 97 S.Ct. 646, 50 L.Ed.2d 627 (1976).[1]

This analysis, in fact, is essentially rephrasing what we had already said in *United States v. Rollins,* 784 F.2d 35 (1st Cir. 1986). There the district court, inter alia, told the jury that the defendant's "interest may create a motive for the giving of false testimony." That charge, because of its length, was more harmful than the one at bar, and there was, perhaps, more reason for our complaining that "laboring the obvious" was suggesting that the court "has a message—don't trust this defendant." Nonetheless, no United States Attorney familiar with our reversal of the district court in *Rollins* should have even considered filing request No. 25, and we believe that no judge familiar therewith would have given it. We add that a charge reflecting on defendant as a witness was particularly conspicuous when he was the only witness for the defense.

## II

There was added prejudice to the defendant because of another instruction given over defendant's objection concerning the credibility of a government witness. The court commented on the credibility of the testimony of an unindicted co-conspirator, who testified for the government under a grant of immunity, as follows: "you should realize that although an immunized witness may not be prosecuted for past crimes revealed by his testimony, even an immunized witness is subject to prosecution for perjury if he intentionally lies under oath." The defendant argues, quite correctly we think, that the error associated with the improper comment on his own credibility was exacerbated by this comment, which could have bolstered the credi-

---

**1.** *See, also,* Devitt & Blackmar, Federal Jury Practice and Instructions: Criminal § 17.12 (3d ed. 1977), where, after citing a number of cases criticizing, but not holding it error, expanding upon the defendant's interest, the authors stated, at page 550,

> In spite of these holdings the authors do not recommend that the court point to the defendant's special interest. The instruction does not tell the jurors anything they do not already know, and seems to tell them to be careful about believing the defendant.

bility of the government's witness in the eyes of the jury. We think the more proper course would have been for the court to have remained neutral on these credibility issues.

■ We write opinions in part as an intellectual process to test our thinking, and in part to satisfy the parties that, rightly or wrongly, we have considered their views. We publish them, however, so that future lawyers and judges may know the law of the circuit. Particularly with respect to United States Attorneys, for us to publish an opinion in a criminal matter and have it ignored fifteen months later by presenting a request diametrically to the contrary, calls for serious criticism. This was not a recondite point, but one of everyday application, of which clear note should have been taken. Apparently the United States Attorney keeps favorable requests available (how else the ready citation of Second Circuit cases?) rather than a record of our contrary decisions.

■ It is fortunate for the government that a conviction must stand if the record as a whole shows, beyond a reasonable doubt, that the error was not harmful, regardless of the degree of fault of the United States Attorney. *See United States v. Hasting*, 461 U.S. 499, 506 n. 5, 103 S.Ct. 1974, 1979 n. 5, 76 L.Ed.2d 96 (1983), suggesting other procedures, so far as the United States Attorney is concerned. The government makes its customary claim that defendant's guilt was clear. This contention, as always, presents a question of fact. The basic issue is whether defendant intended to defraud the bank. We start with an impression from the record as a whole, including the fact that his associates short-changed him, that defendant was short on intelligence. He knew that his invoices were false, but he believed that their purpose was to mislead one Harris and enable funds to go, perhaps wrongfully, to his associates. He knew that the bank would receive the invoices, and would misunderstand them, but he believed that the bank's overall payments were fixed; that the bank would depend not on his invoices, but on requisitions, and that the

only consequence of the invoices was to change the recipient. He testified flatly that he had no intent to injure the bank. That this might be a hard story to swallow should not mean that defendant was not harmed by reflections on his credibility. Indeed, it might be said to make the reflections peculiarly prejudicial. It is hardly consistent for the court to charge the jury as to the presumption of innocence and at the same time indicate doubts about defendant's credibility.

If the doubts here had been more strongly expressed we could have no question. But there was more. The court informed the jury with respect to the charge of conspiracy that "it is always thought that a crime is more culpable if two or more people combine to do something." The history of the law of conspiracy was of no concern of the jury's. The issue was whether defendant had conspired, not whether it was a particularly obnoxious offense, a comment that might well prejudice the jury against him. While, in theory, the seriousness of the charge might make a jury more reluctant to convict, defendant did not view it that way, and duly objected. His point was well taken. Language by prosecutors is often excused because of appropriate cautions by the court. Here it was the court itself that could be read as appealing to the jury's emotions.

The prejudicial impact of that instruction was made worse by the context in which it was given. The court, *sua sponte*, delivered that charge on the morning of the second day of the jury's deliberation assertedly to clear the jurors' minds as to the legal issues, although they had indicated no doubts. The charge, however, did less than that, in two senses. Less, in that it was strikingly bob-tailed. Less, because the court stated that some of the matters it had stated the day before may have been "bogged down in legalese.... I am going to try and simplify it as much as possible." While we disagree with defendant that this foreshortened supplemental charge omitted anything of basic importance, it came very close to it. Moreover, it may have tended to appear to have intended omissions by its

very phraseology. To the extent that the jury may have thought it a substitution rather than clarification it could have added, rather than reduced, confusion. *Cf. United States v. Velez,* 652 F.2d 258, 261–62 (2d Cir.1981) (charge stated to be adjunct, not substitute).

Finally, defendant objects to three items of evidence that the court excluded. There was no error, let alone prejudicial error. We return, however, to whether the three matters that we have discussed in descending order of importance can, at least jointly, be considered of insufficient consequence in light of the government's strong case, to warrant a new trial. We may wonder if defendant will fare better on a new trial. Nonetheless, we believe, viewed at least cumulatively, that we cannot, in good conscience, find beyond a reasonable doubt that he was not harmed.

We add, for the benefit of the United States Attorney on the retrial, that his summation with respect to the credibility of the pleading defendant, Romeyn, came close to improper vouching. The facts are too long to merit detailing in this opinion.

*Vacated.*