STATE OF CONNECTICUT *v.* KAZMIERZ SULEWSKI
(AC 26394)

DiPentima, Rogers and Pellegrino, Js.

Argued September 13—officially released December 19, 2006

*Jon L. Schoenhorn*, with whom was *Johanna M. Canning*, for the appellant (defendant).

*Rita M. Shair*, senior assistant state's attorney, with whom were *Scott J. Murphy*, state's attorney, and *Paul N. Rotiroti*, assistant state's attorney, for the appellee (state).

*Opinion*

ROGERS, J. The issue in this appeal is whether the trial court properly denied the defendant's motion to suppress items found at his residence following an investigative or *Terry* stop. See *Terry* v. *Ohio*, 392 U.S. 1, 21–22, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

The defendant, Kazmierz Sulewski, appeals from the judgment of conviction rendered following his conditional plea of nolo contendere[1] to possession of narcotics with intent to sell by a person who is not drug-dependent in violation of General Statutes § 21a-278 (b). The court accepted the defendant's plea after it denied his motion to suppress. On appeal, the defendant claims that the court improperly denied his motion to suppress, which was based on a motor vehicle stop that was allegedly invalid under the federal and state constitutions.[2] We affirm the judgment of the trial court.

The following facts are relevant to our resolution of the defendant's appeal. On December 5, 2001, a confidential informant engaged in a controlled buy of narcotics from the defendant. At the time of the transaction,

---

[1] See General Statutes § 54-94a.

[2] The defendant also claims that (1) the court improperly alternatively concluded that the location of his home was discoverable under the independent source doctrine and (2) contrary to the state's proposed statement of alternate grounds for affirmance, the location of his home was not available through the doctrine of inevitable discovery. We need not address the court's ruling regarding the independent source doctrine because we conclude that the stop was valid under *Terry* v. *Ohio*, supra, 392 U.S. 1. With regard to the second claim, as argued by the state, we cannot review this claim because the court did not make a ruling on the basis of the theory of inevitable discovery.

the defendant was known to the confidential informant only as "Kaz," a Polish male from Bristol who used a van owned by American Home Patient, Inc., to deliver cocaine. After the police confirmed that a hand-to-hand transaction involving a substance that tested positive for cocaine had taken place, Officer Jerry Chrostowski of the New Britain police department conducted further investigation regarding the van driven by the defendant. Chrostowski ascertained that American Home Patient, Inc., was located in New Britain and closed at 5 p.m., which was a little more than one hour after the controlled buy had taken place. Chrostowski set up surveillance, saw the defendant exit the business and drive away in the same delivery van that was observed during the controlled buy.

A short time later, a marked police cruiser, driven by a fully uniformed police officer, Maurice Violette, also of the New Britain police department, stopped the defendant, having been directed by Chrostowski to stop the van and to obtain the identity and address of the driver because the driver had recently engaged in an illegal narcotics transaction. Violette told the defendant that he was investigating an incident in which an automobile similar to the defendant's had been involved. Violette testified that although this statement was not accurate, he made it in order to obtain the defendant's name and address. Once Violette obtained that information, he returned the defendant's license and registration and told the defendant he was free to leave. During the stop, the defendant was not asked to leave his van, he was not handcuffed and the van was not searched by the police. The stop was brief, lasting approximately five minutes. The information gathered from this stop, along with an additional controlled buy and further surveillance, was later used as the basis to obtain a January 3, 2002 search warrant for the defendant and his residence.

On May 17, 2004, the defendant filed a motion to suppress all the evidence seized from his residence on January 4, 2002, as the fruits of an illegal motor vehicle stop to obtain the defendant's identification information. The defendant claimed, inter alia, that the stop was illegal because there was no lawful basis to conduct a stop solely to obtain his identification, and there was no reasonable and articulable suspicion allowing for the search and seizure of his person. After conducting an evidentiary hearing on the defendant's motion and hearing oral arguments, the court denied the motion to suppress. In its written memorandum of decision denying the defendant's motion, the court found that a reasonable and articulable suspicion existed to stop the vehicle, reasoning that there is a legitimate law enforcement purpose in not immediately effectuating an arrest of a suspect under these circumstances when the identity of a confidential informant in a controlled buy would be exposed.

The defendant then entered a plea of nolo contendere conditioned on his right to appeal from the court's denial of his motion. He was sentenced to a total effective term of incarceration of fifteen years, execution suspended after eight years, followed by five years of probation. This appeal followed. Additional facts will be set forth as necessary.

As an initial matter, we note that "[o]ur standard of review of a trial court's findings and conclusions in connection with a motion to suppress is well defined. A finding of fact will not be disturbed unless it is clearly erroneous in view of the evidence and pleadings in the whole record . . . . [When] the legal conclusions of the court are challenged, [our review is plenary, and] we must determine whether they are legally and logically correct and whether they find support in the facts set out in the court's memorandum of decision . . . ." (Internal quotation marks omitted.) *State* v. *Pierre*, 277

Conn. 42, 92, 890 A.2d 474, cert. denied, 547 U.S. 1197, 126 S. Ct. 2873, 165 L. Ed. 2d 904 (2006).

I

The defendant claims that the court improperly denied his motion to suppress because under the fourth amendment to the United States constitution,[3] the police did not have a reasonable and articulable suspicion at the time of the stop, and there was no legitimate basis for the stop because its purpose was to obtain identification and residence information. We disagree.[4]

A

The defendant argues that a reasonable and articulable suspicion did not exist at the time of the stop because more than one and one-half hours[5] elapsed between the time of the transaction and the motor vehicle stop, and, therefore, the stop was invalid under *Terry* v. *Ohio*, supra, 392 U.S. 1.[6]

"Under the fourth amendment to the United States constitution . . . a police officer may briefly detain an individual for investigative purposes if the officer has a reasonable and articulable suspicion that the individual has committed or is about to commit a crime." (Internal

---

[3] "The fourth amendment to the federal constitution, made applicable to the states through the due process clause of the fourteenth amendment, provides in relevant part that [t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." (Internal quotation marks omitted.) *State* v. *Wilkins*, 240 Conn. 489, 495, 692 A.2d 1233 (1997).

[4] It is undisputed that a stop had occurred. Stopping an automobile and detaining its occupants constitutes a seizure. See *Delaware* v. *Prouse*, 440 U.S. 648, 653, 99 S. Ct. 1391, 59 L. Ed. 2d 660 (1979).

[5] The court found, and the evidence supports its finding, that the stop occurred a little more than one hour after the controlled buy had taken place.

[6] Defense counsel conceded at oral argument that if the stop had been made at the time of the transaction or shortly thereafter, it would have been proper under *Terry* v. *Ohio*, supra, 392 U.S. 1.

quotation marks omitted.) *State* v. *Clark*, 255 Conn. 268, 281, 764 A.2d 1251 (2001).

"[I]n justifying [a] particular intrusion the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion. . . . *Terry* v. *Ohio*, supra, 392 U.S. 21 . . . . In determining whether a detention is justified in a given case, a court must consider if, relying on the whole picture, the detaining officers had a particularized and objective basis for suspecting the particular person stopped of criminal activity." (Citations omitted; internal quotation marks omitted.) *State* v. *Santos*, 267 Conn. 495, 505, 838 A.2d 981 (2004); see also *Illinois* v. *Wardlow*, 528 U.S. 119, 123–24, 120 S. Ct. 673, 145 L. Ed. 2d 570 (2000).

"The determination of whether a reasonable and articulable suspicion exists rests on a two part analysis: (1) whether the underlying factual findings of the trial court are clearly erroneous; and (2) whether the conclusion that those facts gave rise to such a suspicion is legally correct." (Internal quotation marks omitted.) *State* v. *Santos*, supra, 267 Conn. 504–505.

The court based its finding of a reasonable and articulable suspicion on the observations of police officers and the reliability of the confidential informant. The defendant challenges the factual bases of both. The defendant first argues that the court erroneously found that the officers could conclude that the defendant had engaged in a narcotics transaction. Sergeant Shawn Farmer of the New Britain police department testified that he gave the confidential informant money to purchase narcotics from the defendant and then radioed other officers, including Chrostowski, to set up surveillance in the area of Maple Street, where the controlled buy was to occur. Farmer testified that he parked near

the area of the controlled buy and saw the confidential informant walk through a backyard but lost sight of him. He further testified that within two minutes, he received a radio transmission that the transaction was complete and that the confidential informant returned to him and stated that the defendant had just sold him a substance that later produced a positive reaction for cocaine. Chrostowski testified that he observed the confidential informant standing at the arranged location on Maple Street, observed the defendant exit from the driver's side of a white American Home Patient, Inc., van and engage in an exchange with the confidential informant consistent with a hand-to-hand narcotics transaction. The defendant maintains that because Chrostowski only saw the confidential informant standing at the arranged location, but did not observe the confidential informant emerge from the backyard, the officers could not conclude that the defendant was the source of any narcotics obtained by the confidential informant that day. The court had ample evidence from which it could conclude that the defendant had engaged in a hand-to-hand narcotics transaction with the confidential informant that day. The court found that the facts of this case exceeded the reasonable and articulable standard required by case law and stated that the stop was predicated on probable cause to believe that the defendant recently had engaged in an illegal narcotics sale. The court had before it testimony from Chrostowski that he personally observed the hand-to-hand transaction and testimony from Farmer that the confidential informant relayed to him that the narcotics had come from the defendant.

The defendant also claims that the court improperly found the confidential informant to be reliable. Although the record does not support the court's finding that the informant provided information leading to seizures of narcotics in prior cases, the court nevertheless

reasonably could have concluded that the informant was reliable. The fact that the confidential informant was not anonymous supports an inference of reliability because the informant could expect adverse consequences if the information provided was erroneous. *State* v. *Barton*, 219 Conn. 529, 550–51, 594 A.2d 917 (1991). The police reasonably could have credited the confidential informant's statement to Farmer that he had engaged in a controlled buy with the defendant because the substance given to Farmer by the confidential informant tested positive for cocaine. See *State* v. *Johnson*, 219 Conn. 557, 563–64, 594 A.2d 933 (1991). Moreover, Chrostowski independently observed facts that reasonably were consistent with criminal activity. "Police efforts in verifying information provided by an informant may help . . . verify his or her reliability. *State* v. *Smith*, 257 Conn. 216, 226, 777 A.2d 182 (2001)." *State* v. *Days*, 89 Conn. App. 789, 800 n.5, 875 A.2d 59, cert. denied, 275 Conn. 909, 882 A.2d 677 (2005). "[S]tatements made by an informant are entitled to greater weight if corroborated by evidence independently gathered by the police." *State* v. *Rodriguez*, 223 Conn. 127, 136, 613 A.2d 211 (1992). On the basis of the foregoing, we find that the court's conclusion that the confidential informant was reliable was proper.

The court's legal conclusions that a reasonable and articulable suspicion existed at the time of the stop and that the actions of the police were constitutionally valid, also were proper under the facts. "In determining the constitutional validity of an investigatory stop, both the United States Supreme Court and our Supreme Court require a balancing of the nature of the intrusion on personal security against the importance of the government interest inducing that intrusion. *United States* v. *Hensley*, 469 U.S. 221, 228, 105 S. Ct. 675, 83 L. Ed. 2d 604 (1985); *State* v. *Mitchell*, 204 Conn. 187, 196–97, 527 A.2d 1168, cert. denied, 484 U.S. 927, 108 S. Ct. 293, 98

L. Ed. 2d 252 (1987)." *State* v. *Pierog*, 33 Conn. App. 107, 111, 634 A.2d 301 (1993), cert. denied, 228 Conn. 920, 636 A.2d 851 (1994). In *United States* v. *Hensley*, supra, 229, the United States Supreme Court held that when police have been unable to locate a person suspected of involvement in a past crime, the ability to briefly stop that person, ask questions or check identification in the absence of probable cause promotes the strong government interest in solving crimes and bringing offenders to justice. The court also held that "if police have a reasonable suspicion, grounded in specific and articulable facts, that a person they encounter *was involved in* or is wanted in connection with a completed felony, then a *Terry* stop may be made to investigate that suspicion." (Emphasis added.) Id.

When Violette approached the defendant, he possessed sufficient information to give rise to a particularized and objective basis for suspecting that the defendant had engaged in criminal activity. Chrostowski witnessed the transaction, testified that he saw the license plate on the seller's van and told Violette to stop the driver of that van because he had recently engaged in an illegal narcotics transaction.[7] After the police confirmed that a hand-to-hand transaction involving a substance that tested positive for cocaine had taken place, the police immediately responded by obtaining further information regarding the defendant's place of employment and established surveillance at that location. The police surveilled the defendant's workplace, waited

---

[7] The fact that Violette did not personally know the particular circumstances giving rise to the reasonable and articulable suspicion is of no moment as long as they were known by Chrostowski when he gave the order to stop the vehicle. See *State* v. *Schoenbneelt*, 171 Conn. 119, 124, 368 A.2d 117 (1976) ("collective knowledge of an entire organization may be imputed to an individual officer when he is requested to stop and search a vehicle"); see also *State* v. *Watson*, 165 Conn. 577, 586, 345 A.2d 532 (1973), cert. denied, 416 U.S. 960, 94 S. Ct. 1977, 40 L. Ed. 2d 311 (1974).

until the defendant left his workplace for the day and at that time stopped his vehicle. Chrostowski testified that after witnessing the transaction at 3:45 p.m., he researched the address of American Home Patient, Inc., and learned that it was located on South Main Street and that the office closed at 5 p.m. He set up surveillance at the office of American Home Patient, Inc., and saw the defendant leave the building shortly after 5 p.m. Thereafter, he radioed officers, including Violette, directing them to stop the van and determine the identity of the driver.

Because they witnessed the transaction and had corroborating statements from the confidential informant that the narcotics transaction had taken place, the officers had a reasonable and articulable suspicion under *United States* v. *Hensley*, supra, 469 U.S. 221, that the defendant had engaged in criminal activity. Applying the balancing test in *Hensley* to the facts of the present case, it was reasonable for the police not to detain the defendant at the time of the hand-to-hand transaction due to the legitimate law enforcement purpose of protecting the identity of the confidential informant who participated in the controlled buy.[8] As the state argued before this court, the police would have risked exposing the identity of the confidential informant if they had stopped the defendant at that point.

We conclude that the *Terry* stop in this case was justified by the totality of the circumstances surrounding the defendant's detention.

---

[8] In the context of defining the nature and scope of the informant's privilege, the United States Supreme Court in *Roviaro* v. *United States*, 353 U.S. 53, 59, 77 S. Ct. 623, 1 L. Ed. 2d 639 (1957), explained that "[t]he purpose of the privilege is the furtherance and protection of the public interest in effective law enforcement. The privilege recognizes the obligation of citizens to communicate their knowledge of the commission of crimes to law-enforcement officials and, by preserving their anonymity, encourages them to perform that obligation."

B

The defendant also contends that there was no legitimate basis for the stop because the purpose of the stop was to identify him.

The United States Supreme Court has stated: "Our decisions make clear that questions concerning a suspect's identity are a routine and accepted part of many *Terry* stops. See *United States* v. *Hensley*, [supra, 469 U.S. 229] ('[T]he ability to briefly stop [a suspect], ask questions, or check identification in the absence of probable cause promotes the strong government interest in solving crimes and bringing offenders to justice'); *Hayes* v. *Florida*, [470 U.S. 811, 816, 105 S. Ct. 1643, 84 L. Ed. 2d 705 (1985)] ('[I]f there are articulable facts supporting a reasonable suspicion that a person has committed a criminal offense, that person may be stopped in order to identify him, to question him briefly, or to detain him briefly while attempting to obtain additional information'); *Adams* v. *Williams*, [407 U.S. 143, 146, 92 S. Ct. 1921, 32 L. Ed. 2d 612 (1972)] ('A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time'). Obtaining a suspect's name in the course of a *Terry* stop serves important government interests." *Hiibel* v. *Sixth Judicial District Court of Nevada*, 542 U.S. 177, 186, 124 S. Ct. 2451, 159 L. Ed. 2d 292 (2004); see also *State* v. *Marti*, 89 Conn. App. 241, 249, 872 A.2d 928 ("we are aware of many cases recognizing the identification of a suspect as a reasonable and permissible objective of an investigatory stop"), cert. denied, 274 Conn. 913, 879 A.2d 893 (2005), cert. denied, 546 U.S. 1184, 126 S. Ct. 1364, 164 L. Ed. 2d 73 (2006).

In order to protect the confidentiality of the informant, the police surveilled the defendant's workplace,

waited until he entered the van used in the transaction and subsequently stopped him. We have concluded that given the totality of the circumstances, the police possessed a reasonable and articulable suspicion that the defendant had committed a crime, and, therefore, the routine check of his license and registration to obtain his identification was permissible. See *State* v. *Lipscomb*, 258 Conn. 68, 79, 779 A.2d 88 (2001). The stop was not a random spot check of the defendant's motor vehicle; see, e. g., *Delaware* v. *Prouse*, supra, 440 U.S. 648; *State* v. *Paoletto*, 181 Conn. 172, 179, 434 A.2d 954 (1980); but rather, was based on a reasonable and articulable suspicion of criminal activity. Accordingly, we conclude that the court properly denied the defendant's motion to suppress.

## II

We next turn to an analysis of the constitutional validity of the stop of the defendant's vehicle under the state constitution. Specifically, the defendant claims that the officers violated his rights under article first, § 7, of the Connecticut constitution[9] when Violette stopped his vehicle and asked for his identification.[10] We disagree.

Our plenary review of the defendant's claim that the court's denial of his motion to suppress violates our state constitution includes the following tools of analysis: (1) the text of the relevant statutory or constitutional provision; (2) prior holdings and dicta of the

[9] The constitution of Connecticut, article first, § 7, provides: "The people shall be secure in their persons, houses, papers and possessions from unreasonable searches or seizures; and no warrant to search any place, or to seize any person or things, shall issue without describing them as nearly as may be, nor without probable cause supported by oath or affirmation."

[10] The defendant also claims that there was a violation of his rights under article first, § 9, of the constitution of Connecticut. We review this state constitutional claim only under article first, § 7, because the defendant has failed to provide a separate and distinct analysis of § 9 under *State* v. *Geisler*, 222 Conn. 672, 684–85, 610 A.2d 1225 (1992).

Connecticut appellate courts; (3) federal precedent; (4) decisions of other state courts; (5) historical considerations; and (6) socioeconomic considerations. *State* v. *Geisler*, 222 Conn. 672, 684–85, 610 A.2d 1225 (1992).

We have been unable to discern, and the defendant has not provided us, any clear textual[11] or historical basis[12] for assigning independent meaning to our state constitutional provision governing searches and seizures. Our precedents provide no direct support for such a distinction. The defendant has referred to only one case from our sister states and urges us to adopt the analysis used in *Commonwealth* v. *Melendez*, 544 Pa. 323, 676 A.2d 226 (1996). In that case, Philadelphia police had conducted surveillance of the defendant's residence for three weeks, during an investigation of possible drug activity. Id., 326. Police at the scene were in communication with an officer at another location,

---

[11] The defendant concedes that the text of article first, § 7 is "quite similar to" the text of the fourth amendment; *State* v. *Marsala*, 216 Conn. 150, 159, 579 A.2d 58 (1990); *State* v. *Miller*, 227 Conn. 363, 381, 630 A.2d 1315 (1993); and, thus, may not "meaningfully [assist]" this inquiry; *State* v. *Joyce*, 229 Conn. 10, 19, 639 A.2d 1007 (1994), on appeal after remand, 243 Conn. 282, 705 A.2d 181 (1997), cert. denied, 523 U.S. 1077, 118 S. Ct. 1523, 140 L. Ed. 2d 674 (1998).

[12] The defendant provides no historical basis for assigning independent meaning to article first, § 7, stating that it is of no practical benefit to this inquiry. The circumstances surrounding the adoption of article first, § 7 do not suggest otherwise. "The declaration of rights adopted in 1818 appears to have its antecedents in the Mississippi constitution of 1817, which in turn derived from the federal bill of rights and the Virginia declaration of rights of 1776. . . . The search and seizure provision in our 1818 constitution, then article first, § 8, closely resembles the fourth amendment to the United States constitution. Although its enumeration was changed to article first, § 7, when the 1965 constitution incorporated article first, § 4, into article seventh, its language has not been altered since its original adoption. . . . The language of article first, § 7, which was based upon the fourth amendment. was adopted with little debate. . . . Thus, the circumstances surrounding the adoption of article first, § 7, lend weight to the view that, in most cases, a practice permitted under the fourth amendment is permissible under article first, § 7." (Citations omitted; internal quotation marks omitted.) *State* v. *Mikolinski*, 256 Conn. 543, 548–49, 775 A.2d 274 (2001).

who was typing an application for a search warrant of the premises. Id. While the officers were surveilling the defendant's residence, the defendant left the house and drove away in an automobile. Id. Police then stopped her, removed her from the car, searched her purse and found evidence of drug sales. Id. The court held that the stop was invalid. Id., 327. The court reasoned that despite the fact that the defendant was a suspect in an ongoing investigation, the officers did not have a reasonable and articulable suspicion that she was engaging in criminal activity at the time of the stop but rather only had the suspicion that she was involved in illegal drug sales at a time and location wholly separate from where she was stopped. Id., 328–29.

The present case is factually distinguishable from *Melendez*. In *Melendez*, the police "had observed no criminal activity on the part of [the defendant], but stopped and searched her because she was a suspect in a felony investigation." Id., 326. Here, unlike the officers in *Melendez*, the police witnessed the transaction and had a reasonable and articulable suspicion that the defendant had engaged in criminal activity. The police stopped him later so as to protect the identity of the confidentiality of the informant.

"Under the fourth amendment to the United States constitution, and under article first, [§ 7] of the Connecticut constitution, a police officer may briefly detain an individual for investigative purposes if the officer has a reasonable and articulable suspicion that the individual has committed or is about to commit a crime." (Internal quotation marks omitted.) *State* v. *Clark*, supra, 255 Conn. 281. "A police officer who has proper grounds for stopping a suspect has constitutional permission to immobilize the suspect briefly in order to check a description or an identification, so long as his conduct is strictly tied to and justified by the circumstances which rendered its initiation permissible." (Internal

quotation marks omitted.) *State* v. *Carcare*, 75 Conn. App. 756, 768, 818 A.2d 53 (2003).

Furthermore, the defendant has advanced no compelling policy considerations to warrant a broader reading of the state constitution under the facts of this case. Accordingly, we conclude that the defendant has failed to demonstrate a violation of article first, § 7, under the state constitution.

The judgment is affirmed.

In this opinion the other judges concurred.